UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| DESHAWN DARBY,<br><br>          Plaintiff,<br><br>    v.<br><br>LOS ANGELES COUNTY, et al.,<br><br>          Defendants. | Case No.: CV 17-04835-CAS (JDE)<br><br>MEMORANDUM AND ORDER DISMISSING COMPLAINT WITH LEAVE TO AMEND |

# I.

## BACKGROUND

Plaintiff Deshawn D. Darby ("Plaintiff"), who is in custody at the Twin Towers Correctional Facility in Los Angeles ("the Jail"), proceeding pro se, filed a civil rights complaint (Dkt. 1, "Complaint") under 42 U.S.C. § 1983 ("Section 1983" or "§ 1983") on June 30, 2017 against the County of Los Angeles ("the County") and eighteen individual defendants named in the body of the Complaint: (1) Jason Thompson, a police officer employed by the Los Angeles Police Department ("LAPD") ("Officer Thompson"); (2) David Suh, a police officer employed by the LAPD ("Officer Suh"); (3) Charlie Beck, the Chief of the LAPD ("Chief Beck"); (4) Jackie Lacey, District Attorney for Los

Angele County ("District Attorney Lacey"); (5) Deputy District Attorney ("DDA") Steven Ipson; (6) DDA Rebekah Weldon; (7) DDA Jeff Kelly; (8) Bob Chen/Chan; (9) Kevin Liu; (10) David Richman;[1] (11) Janice Fukai, Alternate Public Defender for Los Angeles County ("Alternate Public Defender Fukai"); (12) Deputy Public Defender ("DPD") Jane DOE; (13) DPD Rent Wakuta; (14) the Honorable Scott Gordon ("Judge Gordon"), Judge of the Los Angeles County Superior Court ("Superior Court"); (15) the Honorable Douglas Sortino, Judge of the Superior Court ("Judge Sortino"); (16) Jerry Lennon, a private attorney of the California State Bar Panel acting as stand-by attorney; (17) Michael DiMateo, a private investigator appointed by the Superior Court; and (18) Lon McCracken, an individual employed by Camacho Auto Sales of Palmdale, California. Complaint ¶¶ 5, 6, 7, 28, 47.

In accordance with 28 U.S.C. §§ 1915(e)(2) and 1915A, the Court must screen the Complaint for purposes of determining whether the action is frivolous or malicious, fails to state a claim on which relief might be granted, or seeks monetary relief against a defendant who is immune from such relief.

## II.

## SUMMARY OF ALLEGATIONS IN THE COMPLAINT

The Complaint is predominantly a description of a series of alleged events, loosely organized around categories of defendants.

A. Allegations against LAPD Officers

On September 16, 2015, LAPD officer arrested Plaintiff for hit-and-run and taken to the Wilshire Division. Id. ¶ 10. At approximately 11:14 p.m. on the same day, Officer Thompson completed a probable cause determination

---

[1] Defendants Chen/Chan, Liu, and Richman are named in the same paragraph as District Attorney Lacey and defendants Ipson, Weldon, and Kelly, which leads the Court to infer that they are employed by the District Attorney's office; however, Plaintiff does not specify their employer. See Complaint ¶ 28

form and submitted it to the Superior Court (id. ¶ 11; Dkt 1-1 at 1 (CM/ECF pagination)) in which he wrote that Plaintiff was involved in several accidents. Id. ¶ 12. Officer Thompson wrote that in one of the accidents, Plaintiff's license plate was imprinted on a car in one location; later, Officer Thompson reported Plaintiff's license place was at a separate scene three blocks from the previous location. Id. Officers Thompson and Suh wrote a total of four police reports of which Plaintiff is aware. Id. Plaintiff alleges Officers Suh and Thompson did not mention dispatch phone calls from two witnesses reporting a crime involving "road rage" between two or three cars, one of which allegedly ran Plaintiff's vehicle off the road. Id. ¶ 13. Officers Suh and Thompson also allegedly failed to mention in their reports a 911 call to report an accident from the co-owner of Plaintiff's vehicle, which Plaintiff alleges would exculpate him. Id. ¶ 14. Plaintiff alleges Officers Suh and Thompson moved Plaintiff's bumper and license plate "and caused a false report to be written and after rec[ei]ving no signature stating that there is or isn[']t probable cause[,] still allowed Plaintiff to be sent before another magistrate where they caused the case to be turned over to the district attorney[']s office for the filing of a felony complaint." Id. ¶ 15. Plaintiff alleges Officers Suh and Thompson acted in conjunction with other police officers involved in the investigation. Id. ¶ 16. Plaintiff alleges that on September 16, 2015, Officers Suh and Thompson caused Plaintiff to be charged with one felony and three misdemeanor hit-and-run with injury to person and damage to property. Id. ¶ 17. Plaintiff alleges on information and belief that Chief Beck was aware of Officers Thompson and Suh's "vicious propensities" but failed to act to address them. Id. ¶ 21.

B. Allegations against Personnel from the District Attorney's Office

On September 18, 2015, DDA Ipson filed a criminal complaint against Plaintiff and he was arraigned on the four counts associated with the hit-and-run, including one felony. Id. ¶ 30. Plaintiff has been incarcerated since that

time. Id. Plaintiff alleges the criminal charges were terminated in his favor by order of dismissal on November 17, 2016, but Plaintiff alleges that further detention and prosecution was ordered and directed by DDA Ipson. Id. ¶¶ 18, 32. Plaintiff claims that District Attorney Lacey approved his prosecution and, in the alternative, that it was ratified by District Attorney Lacey and DDAs Ipson, Weldon, and Kelly as part of the investigation and prosecution of the alleged crime. Id. ¶ 34. Plaintiff alleges that District Attorney Lacey and DDAs Ipson, Weldon, Kelly, Chen, Liu, and Richman took an active role in the investigation and prosecution of his alleged crime and caused Plaintiff to be "further detained, incarcerated and prosecuted without probable cause of his guilt in an attempt to secure a conviction against Plaintiff." Id. ¶¶ 35, 36. Plaintiff alleges these defendants individually and collectively knew at the time of Plaintiff's arraignment, and at all times since then, of the existence of evidence proving Plaintiff's innocence and also knew that the evidence collected in connection with the charges was inconsistent with Plaintiff's guilt. Id. ¶¶ 37, 38. Plaintiff alleges each defendant acted outside of his or her jurisdiction and without authorization and that each defendant individually, and in concert, "acted willfully, knowingly and purposefully with specific intent to deprive Plaintiff [] of his right [to] freedom from illegal seizure of his person, freedom from unlawful arrest without evidence in support thereof, and freedom from illegal detention and imprisonment." Id. ¶¶ 39, 40.

C. Allegations against Alternate Public Defender's Office Personnel

On September 18, 2015, DPD Jane DOE was appointed as Plaintiff's public defender. Id. ¶ 49. Plaintiff alleges DPD DOE allowed DDA Ipson to file a felony complaint against him without reasonable or probable cause, and that DPD DOE should have prevented the filing of the unsupported charges. Id. Plaintiff alleges DPD DOE failed to look at all discovery or investigate the case and that she did not object to the filing of the charges against Plaintiff. Id.

¶ 50. The Complaint alleges that on September 30, 2015, DPD Wakuta requested a continuance without Plaintiff's knowledge and admitted he had not spoken to Plaintiff. Id. ¶ 51, 53. Plaintiff further alleges that DPD Wakuta requested another continuance on October 22, 2015 so that DDA Weldon could secure discovery that was hand-delivered by an LAPD detective that day. Id. ¶ 51. Plaintiff alleges that on November 3, 2015, DPD Wakuta waived a preliminary hearing on Plaintiff's behalf without Plaintiff's knowledge. Id. ¶ 53. Plaintiff alleges DPD Wakuta allowed DDA Weldon to amend charges without notice, and later when acting in propia persona ("Pro Per"), Plaintiff learned that his charges only carried a maximum of one year per felony and six months per misdemeanor, whereas DPD Wakuta counseled Plaintiff that the maximum was between 12-14 years and that Plaintiff should accept a deal for five years. Id. ¶ 54.

Plaintiff alleges that "DPD Wakuta failed to investigate and [move] for charges to be consolidated due to there being no actus reus[] of the charged offense where (5) five charges[:] (2) two felony and (3) misdemeanor charges were all from (1) one accident." Id. ¶ 55. With respect to Plaintiff's sixth charge, Plaintiff alleges DPD Wakuta "failed to investigate and prove Plaintiff was never at that location and LAPD and witness[es] were falsifying evidence." Id. Plaintiff alleges defendants Wakuta and Weldon held a preliminary hearing without legal authority to do so, in violation of Plaintiff's rights. Id. ¶ 54. Defendants Wakuta and Kelly "conspired to manipulate Plaintiff [] with false altered medical records to force Plaintiff [] to take a deal." Id. ¶ 56. DPD Wakuta also ordered for medical records to be sealed so that Plaintiff could not see them. Id. The records were allegedly taken out of court by DPD Wakuta, then scanned and altered by DDA Weldon. Id. Plaintiff alleges that in an email exchange between defendants Wakuta and Kelly, DPD Wakuta advised he would return the records to the court. See id. Plaintiff

alleges that DPD Wakuta knew an unidentified individual assaulted Plaintiff and never attempted to introduce that evidence or evidence from 911 calls. Id. ¶ 57. Plaintiff alleges that DPD Wakuta engaged in irregularities regarding GPS records, which Plaintiff alleges were slow to be provided to him, and which contained different information when finally provided. Id.

D. Allegations against Private Citizens

Plaintiff alleges defendant DiMateo would not perform the "duties expected of him," when Plaintiff provided defendant DiMateo with a list of things required to assist Plaintiff while he was Pro Per. Id. ¶ 58. Plaintiff alleges defendant DiMateo failed to: "(1) use court order[ed] visit due to hearing impairment and forced Plaintiff to strain to hear over visiting phone; (2) pick up any discovery from district attorney['s] office, or be at court when agreed; (3) go take photos of vehicle and inv[e]stigate if [there] was damage to rear; (4) go get statements from witnesses at any scene of accidents; (5) pick up transcripts ordered by court and or properly serve subpoenas on witnesses;[and] (6) failed to pick up records of subpoena information on any documents from court after rec[ei]ving 40 hour that he was paid to do nothing." Id. Plaintiff also alleged defendant DiMateo conspired with other defendants from "put[t]ing up a defense." Id. ¶ 59.

Plaintiff alleges defendant Lennon "conspired and assisted in ensuring" Plaintiff did not receive a fair or speedy trial. Id. ¶ 60. As an example, Plaintiff points to defendant Lennon's request of Plaintiff to waive time to allow an additional sixty days to prepare for a hearing even though "Plaintiff was 58 of 60 on calendar for trial." Id. Plaintiff alleges defendant Lennon failed to advise him of the consequences of waiving time and alleges that after a time waiver, defendant Lennon was still not unprepared. Id. Plaintiff alleges that defendant Lennon advised the Court and his family that Plaintiff was incompetent to represent himself, without input from Plaintiff or evidence to support the

assertion. Id. ¶ 62. Defendant Lennon then advised the court and his family to send Plaintiff to a mental hospital. Id. Plaintiff alleges that on or about December 2016 during a court hearing over a discovery dispute regarding 911 calls, defendant Lennon denied ever being given two compact discs -- one of 911 calls and the other of photos from the LAPD. Id. ¶ 63. Defendant Lennon was given these discs by DDA Kelly on or about May or June in 2016. Id.

Plaintiff alleges defendant McCracken conspired to prevent Plaintiff from proving his innocence. Id. ¶ 64. Plaintiff alleges that despite repeated requests and a subpoena, defendant McCracken refused to provide GPS records, although Plaintiff is a customer of Camacho Auto Sales, has a loan from King of Credit, and claims to own or possess these records. Id. ¶¶ 64, 67, 68. Plaintiff further alleges that defendant McCracken provided at least 10 pages of documents to DPD Wakuta in a subpoena served on him in March 2016, and that DPD Wakuta opened the subpoena information although it was "no longer his case or obligation." Id. ¶ 65. Plaintiff alleges defendant McCracken failed to initial written requests to provide Plaintiff with the same documents it had provided DPD Wakuta, although Plaintiff had explained that he was acting as his own attorney. Id. ¶ 66. Defendant McCracken allegedly provided Plaintiff with a three-page document of his GPS location, and the document only showed Plaintiff's location after the collision, further diminishing Plaintiff's ability to prove his innocence. Id.

E. Allegations against Judicial Officers

Plaintiff alleges Judge Gordon expressed prejudicial bias toward Plaintiff. Id. ¶69. Plaintiff further alleges Judge Gordon said "we won't need a trial. I'll just violate his probation and send him to prison that way." Id. Plaintiff also claims that Judge Gordon denied Plaintiff a fair and speedy trial by causing unreasonable delays and denied Plaintiff the ability to represent himself by continuously taking away Plaintiff's Pro Per status without

reasonable or probable cause or affording Plaintiff a hearing or notice. Id. ¶ 70. In addition, Plaintiff alleges Judge Gordon ordered Plaintiff to undergo a mental health evaluation without any evidence of being incompetent in order to avoid a trial and prevent Plaintiff from representing himself. Id. ¶ 71. Plaintiff alleges Judge Gordon refused to turn over subpoenaed information that would have cleared Plaintiff of criminal charges and would have exposed the misconduct of Officers Thompson and Suh in their investigation of the traffic collision that occurred on September 16, 2015. Id. ¶ 72. Plaintiff alleges Judge Gordon allowed the continuation of the criminal prosecution after having knowledge of a lack of probable cause against Plaintiff. Id. ¶ 73. Judge Gordon also allegedly denied a motion to set-aside the criminal information, then failed to give grounds for the denial. Id. Plaintiff alleges Judge Gordon allowed original court records to be removed from the court and then ordered them sealed after they were returned by DPD Wakuta. Id. ¶ 74.

Plaintiff alleges Judge Sortino demonstrated bias toward Plaintiff in mentioning that his wife was a deputy district attorney for Los Angeles County and in describing how he felt about people on probation. Id. ¶ 76. Plaintiff alleges that Judge Sortino held proceedings with no legal authority failed to advise Plaintiff in writing what condition of probation Plaintiff had violated; Plaintiff also contests the basis for the underlying offense. Id. ¶ 77. Plaintiff alleges Judge Sortino found Plaintiff had violated the terms of his probation "based on [a] dismissed case that was not supported by probable cause prior to the filing of the criminal complaint[,] which violated federal law. Id. ¶ 78. Plaintiff asserts that when he raised the issue, Judge Sorino said: "that's irrelevant to what is going on here today." Id. ¶ 79. Plaintiff alleges that Judge Sortino stated throughout proceedings that Plaintiff had disqualified Judge Gordon; Plaintiff felt this was done as a form of retaliation. Id. ¶ 80. Judge

Sortino also referred to Plaintiff as "Jailey" when talking to him and continued to show signs of prejudice by intentionally misstating law. Id. ¶ 81.

Plaintiff alleges that Judge Sortino's and defendant Richman's misstatements of law caused Plaintiff to reject a valid plea, which would have allowed Plaintiff to go home and spend the holidays with his family. Id. Plaintiff claims that both Judge Sortino and defendant Richman said that Plaintiff had a strike for robbery and that he would have to go to prison if he accepted the plea. Id. Plaintiff advised defendants he had no strikes, only "a prior 245/A.D.W.," which Judge Sortino claimed to be within the category of a strike. Id. When calculating time credits, Judge Sortino advised Plaintiff he would only receive time from the day of his probation hold being placed on him, which would have credited Plaintiff approximately 60 days. See id. Later, at the final sentencing hearing, Plaintiff alleges Judge Sortino sentenced him to the maximum sentence and imposed the sixty days that were originally not going to be imposed; Judge Sortino also stated that the "245/A.D.W." charge was not a strike and Plaintiff would serve his sentence in county Jail as opposed to prison. Id. ¶ 82. Plaintiff claims these actions were evil and malicious and that Judge Sortino failed to impose good conduct credit for time when Plaintiff was out on bail on his own recognizance. Id. ¶¶ 82, 83.

Plaintiff also alleges that Judge Sortino allowed a continuance for a witness who was never properly served and perhaps not served at all. Id. ¶ 84. Plaintiff further alleges that the deputy district attorney failed to give a two-day notice to Plaintiff with respect to the witness. See id. Plaintiff alleges that this witness lied under oath and could not recollect or remember the events in question, which should have disqualified him. Id. However, Plaintiff alleges this witness's testimony provided the basis for the prosecution of the criminal case against Plaintiff; additionally, Plaintiff alleges this witness had "committed an assault on Plaintiff and vehicle." Id. Plaintiff alleges that Judge

9

Sortino failed to address discovery issues and allowed defendant Richman to conceal 911 calls that would prove Plaintiff's innocence. Id. ¶ 85. Plaintiff further alleges that all defendants knew of the evidence that would negate the charged offense. Id. Plaintiff alleges that Judges Gordon and Sortino relied on an erroneous report, petitioned by DDA Weldon, and used this report to violate Plaintiff's probation. Id. ¶ 75.

Plaintiff alleges he suffered and continues to suffer great mental anguish and claims economic losses of $15,000 associated with his legal defense against the "unfounded and unwarranted prosecution by defendants," id. ¶ 42, and future economic losses by reason of his incarceration and "having been greatly humiliated and held up to public score and derision." Id. ¶ 41.

Plaintiff alleges the following discrete claims: false arrest and imprisonment; illegal detention; malicious prosecution; abuse of process; prima facie tort; conspiracy; negligence and gross negligence; abuse of authority; and breach of duty and ineffective assistance of counsel. Id. ¶ 91. Plaintiff asserts that his claims emanate from rights secured by the First, Fourth, Fifth, Eighth and Fourteenth Amendments, and as a result, he seeks a declaratory judgment, injunctive relief (against "the Los Angeles District Attorney Office," "the Superior Court," and "the Los Angeles Public Defender Office" and their respective, unspecified, "representatives" to, inter alia "stop with the abuse of process"), court costs, and compensatory and punitive damages. Id. ¶¶ 2, 24, 39, 89, 92, 93, 94, 95.

### III.

### STANDARD OF REVIEW

A complaint may be dismissed for failure to state a claim for two reasons: (1) lack of a cognizable legal theory; or (2) insufficient facts under a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). When screening a complaint, the Court applies the same

standard as it would when evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"). See Rosati v. Igbinoso, 791 F.3d 1037, 1039 (9th Cir. 2015). Rule 12(b)(6), in turn, is read in conjunction with Rule 8(a) of the Federal Rules of Civil Procedure ("Rule 8"). Zixiang Li v. Kerry, 710 F.3d 995, 998-99 (9th Cir. 2013). Under Rule 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." While Rule 8 does not require detailed factual allegations, a complaint must allege enough facts to provide both "fair notice" of the particular claim being asserted and "the grounds upon which [that claim] rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 & n.3 (2007) (citation and quotation marks omitted); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (Rule 8 pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation") (citing Twombly at 555).

Thus, to survive screening, a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Nordstrom v. Ryan, 762 F.3d 903, 908 (9th Cir. 2014) (citations and quotation marks omitted). A claim is "plausible" when the facts alleged in the complaint would support a reasonable inference that the plaintiff is entitled to relief from a specific defendant for specific misconduct. Iqbal, 556 U.S. at 678 (citation omitted); see also Gauvin v. Trombatore, 682 F. Supp. 1067, 1071 (N.D. Cal. 1988) (complaint "must allege the basis of [plaintiff's] claim against each defendant" to satisfy Rule 8 pleading requirements) (emphasis added). Allegations that are "merely consistent with" a defendant's liability, or reflect only "the mere possibility of misconduct" do not "show[ ] that the pleader is entitled to relief" (as required by Fed. R. Civ. P. 8(a)(2)), and thus are insufficient to state a claim that is "plausible on its face." Iqbal, 556 U.S. at 678-79 (citations and quotation marks omitted).

In determining whether the complaint states a claim on which relief may be granted, its allegations of material fact must be taken as true and construed in the light most favorable to Plaintiff. <u>Love v. United States</u>, 915 F.2d 1242, 1245 (9th Cir. 1989). For a plaintiff is appearing <u>pro se</u>, the court must construe the allegations of the complaint liberally and afford the plaintiff the benefit of any doubt. <u>Karim–Panahi v. Los Angeles Police Dep't</u>, 839 F.2d 621, 623 (9th Cir. 1988). However, "the liberal pleading standard . . . applies only to a plaintiff's factual allegations." <u>Neitzke v. Williams</u>, 490 U.S. 319, 330 n.9 (1989). "[A] liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled." <u>Bruns v. Nat'l Credit Union Admin.</u>, 122 F.3d 1251, 1257 (9th Cir. 1997) (quoting <u>Ivey v. Bd. of Regents</u>, 673 F.2d 266, 268 (9th Cir. 1982)).

If the Court finds that a complaint should be dismissed for failure to state a claim, the Court has discretion to dismiss with or without leave to amend. <u>Lopez v. Smith</u>, 203 F.3d 1122, 1126–30 (9th Cir. 2000) (en banc). The Court should grant leave to amend if it appears possible that the defects in the complaint could be corrected, especially if a plaintiff is <u>pro se</u>. <u>Id.</u> at 1130–31; <u>see also</u> <u>Cato v. United States</u>, 70 F.3d 1103, 1106 (9th Cir. 1995) (noting that "[a] pro se litigant must be given leave to amend his or her complaint, and some notice of its deficiencies, unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment"). However, if, after careful consideration, it is clear that a complaint cannot be cured by amendment, the Court may dismiss without leave to amend. <u>Id.</u> at 1105–06.

## IV.

## **DISCUSSION**

A. <u>The Complaint Does not Unambiguously Identify Defendants</u>

The caption of the Complaint lists Los Angeles County, et al., as defendants. Complaint ¶ 1. In the body of the Complaint, however, Plaintiff

names eighteen individual "defendants." Rule 10(a) of the Federal Rules of Civil Procedure requires that the Caption of every complaint "must name all of the parties." <u>See also</u> Local Rule 11-3.8(d) ("The names of the parties shall be placed below the title of the Court and to the left of center, and single spaced. If the parties are too numerous, the names may be continued on the second or successive pages in the same space"); <u>Ferdik v. Bonzelet</u>, 963 F.2d 1258, 1262-63 (9th Cir. 1992) (dismissing action for refusal to comply with court orders to name defendants in the caption). Further, it is unclear in what capacity many of the individually named defendants are sued. <u>See, e.g.</u> Complaint ¶¶ 5, 6, 7.

B. <u>The Complaint Fails to Comply with Federal Rule of Civil Procedure 8</u>

As noted, Rule 8 requires that a complaint contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" <u>Twombly</u>, 550 U.S. at 555 (internal citation omitted). To comply with Rule 8, a plaintiff should set forth "who is being sued, for what relief, and on what theory, with enough detail to guide discovery." <u>McHenry v. Renne</u>, 84 F.3d 1172, 1177 (9th Cir. 1996).

The Complaint does not comply with Rule 8. The Complaint alleges various purported constitutional provisions upon which it is based, and specifies names of various purported common law causes of action, but does not pair specific actions or defendants to particular claims, rendering it impossible for defendants or the Court to know what claims are alleged against which defendants. For example, near the end of the Complaint, Plaintiff alleges claims for: "false arrest and imprisonment; illegal detention; malicious prosecution; abuse of process; prima facie tort; conspiracy tort, negligence and gross negligence; breach of duty and ineffective assistance of counsel" but does not explain which of these claims is brought against which defendants nor does he indicate which specific facts support the specific claims he brings.

The Complaint does not provide each defendant with fair notice of the bases for claims against them, in violation of Rule 8. See Cafasso v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1059 (9th Cir. 2011); see also American Ass'n of Naturopathic Physicians v. Hayhurst, 227 F.3d 1104, 1107-08 (9th Cir. 2000) ("[A] pro se litigant is not excused from knowing the most basic pleading requirements."). The Complaint must therefore be dismissed under Rule 8 and Rule 12(b)(6) on this ground, independent of the substantive deficiencies discussed further below.

   C.   Plaintiff Fails to State a Claim Under Section 1983

       Substantively, the Complaint does not state a civil rights claim under Section 1983 against any defendant.

       To state a claim under Section 1983, a plaintiff must allege that a defendant, while acting under color of state law, caused a deprivation of the plaintiff's federal rights. 42 U.S.C. § 1983; West v. Atkins, 487 U.S. 42, 48 (1988) (citations omitted); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (citation omitted). There is no vicarious liability in Section 1983 lawsuits. Iqbal, 556 U.S. at 676 (citing, inter alia, Monell v. Department of Social Services of the City of New York, 436 U.S. 658, 691 (1978)). Hence, a government official—whether subordinate or supervisor—may be held liable under Section 1983 only when his or her own actions have caused a constitutional deprivation. OSU Student Alliance v. Ray, 699 F.3d 1053, 1069 (9th Cir. 2012) (citing Monell).

       A government official may be held individually liable under Section 1983 for acts taken in a supervisory capacity, but only when the supervisor's own misconduct caused an alleged constitutional deprivation. See Iqbal, 556 U.S. at 676, 677 ("Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct."); OSU Student Alliance, 699 F.3d at 1069 (supervisor liable under Section 1983 only

14

if "he . . . engaged in culpable action or inaction himself") (citing Iqbal, 556 U.S. at 676). A supervisor may "cause" a constitutional deprivation for purposes of Section 1983 liability, if he or she (1) personally participated in or directed a subordinate's constitutional violation; or (2) was not "physically present when the [plaintiff's] injury occurred," but the constitutional deprivation can, nonetheless, be "directly attributed" to the supervisor's own wrongful conduct. See Starr v. Baca, 652 F.3d 1202, 1207 (9th Cir. 2011).

Allegations regarding causation "must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1988) (citations omitted). An individual "causes" a constitutional deprivation when he or she (1) "does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he [or she] is legally required to do that causes the deprivation"; or (2) "set[s] in motion a series of acts by others which the [defendant] knows or reasonably should know would cause others to inflict the constitutional injury." Lacey v. Maricopa County, 693 F.3d 896, 915 (9th Cir. 2012) (en banc) (quoting Johnson v. Duffy, 588 F.2d 740, 743-44 (9th Cir. 1978)).

In addition to the Rule 8 deficiencies set forth above, the Complaint substantively does not allege a claim upon which relief can be granted.

1. The Heck Bar

As all of Plaintiff's claims appear to relate to his arrest and the court proceedings thereafter which culminated in his sentencing following a revocation of a probation and by their nature imply the invalidity of those proceedings, all of Plaintiff's claims appear to be foreclosed by Heck v. Humphrey, 512 U.S. 477, 486-87 (1994). In Heck, the Supreme Court held that if a judgment in favor of a plaintiff on his civil rights claim necessarily will

imply the invalidity of an underlying conviction or sentence, the claim must be dismissed unless the plaintiff can demonstrate that the conviction or sentence already has been invalidated. Id. at 486-87; see also Guerrero v. Gates, 442 U.S. 697, 703 (9th Cir. 2006) (Heck barred civil rights claims brought by plaintiff who had pled guilty alleging wrongful arrest, malicious prosecution, and conspiracy among police officers to bring false charges against him); Cabrera v. City of Huntingon Park, 159 F.3d 374, 380 (9th Cir. 1998) (Heck barred plaintiff's civil rights claims for false arrest and false imprisonment until conviction was invalidated); see also Cotton v. California, Case No. EDCV 16-0202-JAK (JEM), 2016 WL 4775464, *8 (C.D. Cal. Aug. 5, 2016), Report and Recommendation Accepted by 2016 WL 4770026 (C.D. Cal. Sep. 13, 2016) (applying Heck bar to claims allegedly arising from probation violation).

Here, although Plaintiff alleges that certain criminal charges were dismissed (Complaint ¶ 18), he also asserts that his probation violation stemmed from the same conduct. Id. ¶¶ 77-78. Further, the Complaint does not allege that Plaintiff's sentence has been reversed, expunged or otherwise invalidated, nor could it. On October 25, 2017, the Court of Appeal for the State of California, Second Appellate District, Division Five, in case number B280992, an appeal from the Superior Court of Los Angeles County (Superior Court Case No. BA417891), in an unpublished written opinion or which this Court takes judicial notice under Rule 201 of the Federal Rules of Evidence, affirmed Plaintiff's probation revocation, noting that the court had "examined each of [Plaintiff's] contentions" and found them to be "entirely without merit," reciting that the court's independent review of the record reflected that the revocation followed a formal violation hearing "at which witnesses provided substantial evidence of [Plaintiff's] commission of a hit and run following his traffic collision involving two other occupied vehicles."

As a result, all of Plaintiff's claims are barred by <u>Heck</u>.

2. <u>Claims against the County or the City of Los Angeles</u>

Plaintiff purports to bring a claim against the County for the conduct of LAPD Officers Thompson and Suh, as well as LAPD Chief Beck. Complaint ¶ 8. As an initial matter, it would appear that, at least with respect to LAPD representatives Thompson, Suh and Chief Beck, the proper entity would be the City of Los Angeles, not the County.

Regardless of whether Plaintiff intends to sue the City or the County, a local government entity may only be sued under § 1983 for constitutional torts committed by its agents or employees according to an official policy, practice, or custom. <u>See</u> <u>Monell</u>, 436 U.S. at 690-91. Municipalities are "persons" subject to liability under Section 1983 where official policy or custom causes a constitutional tort. <u>Id.</u> at 690. However, a municipality "may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is only when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." <u>Id.</u> at 694 (1978). Thus, a municipality may not be held liable for the alleged actions of its employees or agents unless "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted or promulgated by that body's officers," or if the alleged constitutional deprivation was "visited pursuant to a governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." <u>Id.</u> at 690-91.

Here, Plaintiff has failed to identify any regulations or policy statements of either the City or County of Los Angeles, or officially adopted or promulgated decisions from either entity, the execution of which by its agents

or employees allegedly inflicted the injuries about which he is complaining. Plaintiff has therefore failed to allege sufficient facts for the Court to "draw the reasonable inference" that the City or the County has a governmental custom of engaging in the kind of unconstitutional conduct that Plaintiff is alleging occurred here. See, e.g., Trevino v. Gates, 99 F.3d 911, 918 (9th Cir. 1996) ("Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy."); Thompson v. Los Angeles, 885 F.2d 1439, 1443-44 (9th Cir. 1989) ("Consistent with the commonly understood meaning of custom, proof of random acts or isolated events are insufficient to establish custom."), overruled on other grounds, Bull v. City & Cty. of S.F., 595 F.3d 964, 981 (9th Cir. 2010) (en banc). Accordingly, the Complaint fails to state a claim against the County or the City of Los Angeles.

3.  Official Capacity Actions against Individual Defendants

For Section 1983 actions, an "official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." Kentucky v. Graham, 473 U.S. 159, 166 (1985). Such a suit "is not a suit against the official personally, for the real party in interest is the entity." Id.

The Complaint purports to name t LAPD Chief Beck and LAPD Officers Suh and Thompson in their official capacities. See, e.g., Complaint ¶¶ 5-7. The claims against those defendants sued in their official capacities are properly treated as claims against the entity that employs them, the City of Los Angeles, which Plaintiff erroneously identifies as the County of Los Angeles. However, regardless of whether the City or the County of Los Angeles is the proper defendant, as discussed above, Plaintiff has alleged no unconstitutional policy by any entity. Thus, the claims for damages against all the individual defendants sued in their official capacities fail as a matter of law.

4. <u>Claims against District Attorney Lacey, Alternate Public Defender Fukai, and Chief Beck</u>

Plaintiff's claims against District Attorney Lacey, Alternate Public Defender Fukai, and Chief Beck appear to be based solely on their roles as supervisors. <u>See</u> Complaint ¶¶ 21, 34, 35, 36, 47. Supervisory personnel are generally not liable under §1983 for the actions of their employees under a theory of <u>respondeat superior</u> because "[a] supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them." <u>Taylor</u>, 880 F.2d at 1045. Plaintiff does not describe any specific action taken by these defendants but instead offers vague and conclusory allegations of the involvement of these defendants in any alleged constitutional violations, such as Chief Beck's alleged knowledge of Officers' Suh and Thompson's "vicious propensities," or District Attorney Lacey's alleged approved of the prosecution of Plaintiff. <u>See</u> Complaint ¶¶ 21, 34. But vague and conclusory allegations concerning the involvement of official personnel in civil rights violations are not sufficient. <u>See</u> <u>Ivey</u>, 673 F.2d at 268 (citations omitted). Thus, the claims against these defendants in their supervisory capacity fail.

5. <u>Claims against Prosecuting Attorneys.</u>

Plaintiff brings claims against several members of the Los Angeles District Attorney's office, including defendants Ipson, Weldon, and Kelly.[2] A prosecuting attorney acting within the scope of his or her duties in initiating and pursuing an action and in presenting the state's case is entitled to absolute immunity. <u>See</u> <u>Imbler v. Pachtman</u>, 424 U.S. 409, 427 (1976). This immunity

---

[2] In this section of the Complaint, Plaintiff also purports to name Bob Chen/Chan, Kevin Liu, and David Richman, but fails to allege what role they played in allegedly violating Plaintiff's constitutional rights. <u>See</u> Complaint ¶¶ 28, 35, 36. As the Complaint does not that these individuals were state actors or violated Plaintiff's rights, the claims against these individual defendants fail.

extends to all "acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State. <u>Buckley v. Fitzsimmons</u>, 509 U.S. 259, 273 (1993). A prosecutor is not deprived of immunity because the action he or she took was in error, done maliciously, or in excess of his or her authority. <u>See</u> <u>Imbler</u>, 424 U.S. at 434 n.34 (noting that prosecutor's "deliberate withholding of exculpatory information" and role in allegedly suborning perjury were shielded by absolute immunity).

Plaintiff's allegations against defendants Ipson, Weldon, and Kelly relate primarily to Plaintiff's claim that defendants were aware of Plaintiff's innocence at the time of his arraignment but continued to prosecute him "without probable cause." Complaint ¶¶ 36, 37. Plaintiff also alleges that DDA Kelly "forged the felony complaint." <u>Id.</u> ¶ 35. On examination, the signature from DDA Kelly clearly indicates her signature was "for," or in place of, defendant Ipson. <u>See</u> Dkt. 1-1 at 4. Regardless, the allegations made here relate to actions undertaken during the judicial phase of the criminal process and they are entitled to prosecutorial immunity.

     6.  <u>Claims against Public Defenders.</u>

Plaintiff's claims against DPDs DOE and Wakuta under § 1983 fail, as a public defender representing a client in the lawyer's traditional adversarial role is not a state actor. <u>Miranda v. Clark Cty.</u> 319 F.3d 465, 466 (9th Cir. 2003) (citing <u>Polk Cty. v. Dodson</u>, 454 U.S. 312, 325 (1981)) ("[A] public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding.")).

Plaintiff's allegations against DPD Wakuta could be construed as an attempt to allege in a conspiracy with members of the District Attorney's Office to deprive Plaintiff of his civil rights. <u>See</u> Complaint ¶¶ 54, 56. "A private individual may be held liable under § 1983 if she conspired or entered

joint action with a state actor.'" <u>Crowe v. Cty. of San Diego</u>, 608 F.3d 406, 440 (9th Cir. 2010) (citation omitted). To allege conspiracy in a Section 1983 case, a plaintiff must allege "'an agreement or meeting of the minds' to violate constitutional rights." <u>Id.</u> (citation omitted). However, conclusory allegations of conspiracy unsupported by facts are insufficient to allege a conspiracy between a private party and a state actor. <u>Simmons v. Sacramento Cty. Superior Court</u>, 318 F.3d 1156, 1161 (9th Cir. 2003). Plaintiff's Complaint alleges that DPD Wakuta conspired with DDA Weldon to amend Plaintiff's charges without notice – but the Complaint does not allege that DPD Wakuta could have prevented such an amendment. <u>See</u> Complaint ¶ 54. Plaintiff further alleges that DPD Wakuta and DDA Kelly corresponded by email about the alteration of medical records to force Plaintiff to take a deal, without describing how such an alteration could cause Plaintiff to accept a deal. <u>See id.</u> ¶ 56. Plaintiff also does not allege facts to establish an agreement or meeting of the minds to violate his constitutional rights as required by <u>Crowe</u>. 608 F.3d at 440. Therefore, Plaintiff's claims against the public defenders fail.

      7. <u>Claims against Private Citizens.</u>

      Plaintiff also brings claims against defendants DiMateo, a private investigator, defendant McCracken, an employee of Camacho auto sales, and defendant Lennon, a panel Attorney. Complaint ¶ 58, 59, 60, 64, 65, 66, 67, 68. The thrust of Plaintiff's allegations is that these individual defendants conspired with other defendants to hinder Plaintiff's ability to prove his innocence. <u>See id.</u> The term "persons" under § 1983 encompasses state and local officials sued in their individual capacity, private individuals and entities which acted under color of state law, and local governmental entities. <u>Vance v. Cty. of Santa Clara</u>, 928 F. Supp. 993, 995-96 (N.D. Cal. 1996) (citation omitted). A defendant has acted under color of state law where he or she has "exercised power 'possessed by virtue of state law and made possible only

because the wrongdoer is clothed with the authority of state law.'" <u>West</u>, 487 U.S. at 49 (quoting <u>United States v. Classic</u>, 313 U.S. 299, 326 (1941)). Non-state actors, however, may be held liable under Section 1983 when they have conspired or acted in concert with state actors to deprive a person of his civil rights. <u>See</u> <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 152 (1970). However, a plaintiff bringing claims under Section 1983 alleging a conspiracy between state and non-state actors must sufficiently allege the non-state actors' participation in a conspiracy to deprive the plaintiff of her civil rights. <u>See</u> <u>id.</u>

Plaintiff's claims stated against private citizens are insufficiently pled as they present only conclusory allegations of a conspiracy with no specific, material facts from which a conspiracy could be inferred. <u>See</u> <u>Margolis v. Ryan</u>, 140 F.3d 850, 853 (affirming a district court's decision to dismiss a Section 1983 complaint alleging conspiracy owing to its reliance on conclusory allegations and an absence of specific facts to support the existence of a conspiracy). Therefore, Plaintiff's claims against defendants DiMateo, McCracken, and Lennon fail for a lack of specific, material fact to support a conspiracy claim under Section 1983.

8. <u>Claims against Judicial Officers.</u>

Claims brought against Judges Gordon and Sortino also fail, as judicial officers are absolutely immune from liability for acts performed in their judicial capacity. <u>Mireles v. Waco</u>, 502 U.S. 9, 11 (1991) (<u>per</u> <u>curiam</u>); <u>Miller v. Davis</u>, 521 F.3d 1142, 1145 (9th Cir. 2008) ("It has long been established that judges are absolutely immune from liability for acts done by them in the exercise of their judicial functions." (internal quotations and citation omitted)). "This immunity reflects the long-standing 'general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself.'"

Olsen v. Idaho State Bd. of Med., 363 F.3d 916, 922 (9th Cir. 2004) (quoting Bradley v. Fisher, 13 Wall. 335, 347 (1871)). This judicial immunity insulates judges from suits brought under section 1983. Id. at 923.

Judicial immunity bars suit even if a judge is accused of acting in bad faith, maliciously, corruptly, erroneously, or in excess of jurisdiction. Mireles, 502 U.S. at 11-13. Judicial immunity may be overcome only when the judge's actions are not taken in his or her judicial capacity or when the actions, though judicial in nature, are taken in the "complete absence of all jurisdiction." Id. at 11-12. The allegations against Judges Sortino and Gordon relate to conduct they allegedly undertook as judicial officers during proceedings over Plaintiff's criminal charges. See Complaint ¶¶ 69-85. Thus, the claims arise out of the exercise of the Judges' judicial functions. As the allegations do not involve actions taken in the "complete absence of all jurisdiction," judicial immunity applies and claims against Judges Sortino and Gordon necessarily fail.

## V.

## CONCLUSION AND ORDER

Based upon the foregoing, the claims alleged in the Complaint are subject to dismissal. Although it does not appear that the various substantive pleading deficiencies can be cured by further amendment, because the Complaint is so disjointed, such dismissal will be with leave to amend.

Accordingly, if Plaintiff still desires to pursue his claims, he shall file a First Amended Complaint **within thirty (30) days of the date of this Order** remedying the deficiencies discussed above.

Plaintiff's First Amended Complaint should bear the docket number assigned in this case; be labeled "First Amended Complaint"; and be complete in and of itself without reference to the prior complaint or any other pleading or document. The First Amended Complaint must list the names of each defendant in the caption, on the first page. See Fed. R. Civ. Proc. 10(a); Local

Rule 11-3.8(d). The First Amended Complaint will supersede the original complaint. The First Amended Complaint may not alter the nature of this suit by alleging new, unrelated claims. The First Amended Complaint must identify which defendants are named in which counts, in what capacity, and specify the factual allegations that Plaintiff contends supports liability for each individual defendant. The Clerk is directed to send Plaintiff a blank Central District civil rights complaint form, which Plaintiff is encouraged to use.

Plaintiff is strongly advised to review this Order carefully regarding the various deficiencies outlined herein. If, after review, Plaintiff should decide not to further pursue this action, Plaintiff may file a Notice of Dismissal Pursuant to Federal Rule of Civil Procedure 41(a). The Clerk is directed to provide Plaintiff with a copy of a blank for Notice of Dismissal.

Plaintiff is advised that a voluntary dismissal does not constitute a "strike" under 28 U.S.C. § 1915(g), whereas a dismissal of a civil complaint filed by a prisoner on the grounds that it "fails to state a claim upon which relief may be granted" would constitute a "strike." See 28 U.S.C. § 1915(g).

**Plaintiff is admonished that, if he fails to timely file a First Amended Complaint within 30 days of the date of this Order, the Court will recommend that this action be dismissed for failure to diligently prosecute.**

Dated:   December 5, 2017

_____
JOHN D. EARLY
United States Magistrate Judge